FILED

2026 Mar-26 PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **EVELYN J. HARLING,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 6:24-cv-1237-ACA** |
| | ] | |
| **HARTFORD LIFE AND ACCIDENT** | ] | |
| **INSURANCE COMPANY,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Evelyn Harling receives long-term disability benefits from Defendant Hartford Life and Accident Insurance Company. After approving her application for benefits, Hartford determined that the amount Ms. Harling receives as a Social Security benefit for disabled widows would offset her monthly disability benefit from Hartford. Although Hartford told Ms. Harling that it would offset the amount, it calculated and paid her benefits without an offset for the disabled widow's benefit for an extended period. In February 2024, Hartford informed Ms. Harling that she was overpaid over $16,000 and requested reimbursement. Ms. Harling filed this lawsuit to prevent Hartford from recovering the funds and reducing her future payments.

Both parties move for summary judgment. For the reasons below, the court **WILL GRANT** Hartford's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor. (Doc. 24). The court **WILL DENY** Ms. Harling's motion. (Doc. 23).

## I. BACKGROUND

On cross-motions for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018).

In 2019, Ms. Harling's disability required her to stop working, and she applied for Social Security benefits. (Doc. 15-1 at 58; *see* doc. 15-44 at 42; doc. 15-34 at 131). Ms. Harling's notice of award from the Social Security Administration ("SSA") indicated that she was entitled to "monthly disability benefits" and "disabled divorced widow's benefits." (Doc. 15-44 at 42; doc. 15-34 at 131). The notice stated that she would receive $1,263 for the "Social Security benefits" and that the agency would send "anoth[er] letter" about the disabled widow's benefit. (Doc. 15-44 at 42; doc. 15-34 at 131).

The widow's benefit is paid to Ms. Harling because her ex-husband was the family's primary source of income. *See* 42 U.S.C. § 402(e)(1)(B). Ordinarily, a claimant is not eligible for the widow's benefit until she turns sixty. *See id.* But because Ms. Harling was disabled, she was eligible for the disabled widow's benefit,

2

which allows access to benefit after the claimant turns fifty. *See id.*; (*see also* doc. 15-33 at 58).

Ms. Harling also applied to receive benefits under her long-term disability policy with Hartford. (*See* doc. 15-15 at 99–101). Ms. Harling's policy explains that Hartford calculates benefits by determining the monthly payable benefit and then subtracting any "Other Income Benefits." (Doc. 15-1 at 13–14). "Other Income Benefits" means "the amount of any benefit for loss of income, provided to You, as a result of the period of Disability for which You are claiming benefits under The Policy." (*Id.* at 22). The policy then lists examples of Other Income Benefits, including "disability benefits under . . . the United States Social Security Act." (*Id.*).

In January 2021, Hartford, after initially denying the claim, approved her application for benefits. (Doc. 15-15 at 22–25). In the letter approving her application, Hartford told Ms. Harling that it would reduce her monthly benefits by her Other Income Benefits, including the disabled widow's benefit. (Doc. 15-15 at 22, 24). Hartford attached to the letter a worksheet detailing the benefit calculations, which included reductions for both her Social Security Disability and the disabled widow's benefit. (*Id.* at 25). The letter explained that Ms. Harling would receive the minimum benefit allowed until it received a copy of the SSA award letter for the disabled widow's benefit. (Doc. 15-15 at 24).

In February 2021, the same Hartford claim examiner who sent Ms. Harling the letter approving her benefits reviewed her claim and concluded that Ms. Harling could not obtain both the disabled widow's benefit and other Social Security disability benefits. (Doc. 15-9 at 9). The claim examiner removed the offset from Ms. Harling's benefit, "recalc[ulated] up," and sent a letter requesting an update on Ms. Harling's Social Security Disability application to "evaluate [her long-term disability benefit] claim." (Doc. 15-9 at 9; doc. 15-15 at 21). Hartford specifically requested her approval or denial letter from the SSA. (Doc. 15-15 at 21).

In June 2021, Ms. Harling completed a claimant questionnaire. (Doc. 15-38 at 47). In the questionnaire, she reported receiving Social Security Disability in the amount of $1,280 per month. (*Id.*). The questionnaire had a box for the disabled widow's benefit, but Ms. Harling did not check that box. (*See id.*; *see also* doc. 15-32 at 112). Instead, she checked the box associated with the widow's benefit—a benefit not connected to her disability. (*See* doc. 15-38 at 47). She indicated that she received $566 per month for this benefit. (*See id.*). According to a July 11, 2022 SSA Benefit Verification Letter, Ms. Harling received $566 per month beginning in December 2020 as a "disabled dependent of [a] wage earner." (Doc. 15-34 at 133–34).

In March 2022, Hartford terminated Ms. Harling's benefits for failure to provide proof of an ongoing disability. (Doc. 15-15 at 7–12). Hartford reversed its

decision on receipt and review of additional medical records in June 2022. (*Id.* at 149). Internal records from the same time note that Ms. Harling received two Social Security Disability benefits, citing her 2021 "CQ" and a February 2020 SSA letter that stated she was entitled to the disabled widow's benefit, which would be an offset. (Doc. 15-5 at 11). Consequently, the claims manager wrote that Social Security "[c]larification is needed." (*Id.*). The next month, Hartford sent Ms. Harling a letter that noted she started receiving Social Security Disability in January 2020 and that "she was entitled to disabled divorced widow's benefit starting" at the same time. (Doc. 15-15 at 146). Hartford requested "the award letter for this benefit" because "it would be [an] offset to the claim." (*Id.*).

In response, Ms. Harling provided a benefit verification letter. (Doc. 15-34 at 132–35). The letter contains two distinct sections indicating two different benefit amounts, both covering the period beginning December 2020. (*Id.* at 133–34). Hartford requested additional documentation specific to the disabled widow's benefit. (Doc. 15-5 at 8; *see also* doc. 15-34 at 130–31). Ms. Harling provided the initial notice of award that she previously included in her benefit application with Hartford. (*Compare* doc. 15-34 at 131, *with* doc. 15-44 at 42). In August 2022, Hartford again objected to Ms. Harling's submission. (Doc. 15-15 at 145). Ms. Harling then requested that Hartford communicate with the SSA directly. (Doc. 15-34 at 129).

In July 2023, Ms. Harling completed another claimant questionnaire. (Doc. 15-34 at 67). Like her answer in the June 2021 questionnaire, she reported both Social Security benefits to Hartford, indicating that she received $2,125.60 for both benefits. (*Id.*; *see* doc. 15-32 at 114). But she did not check the box for the disabled widow's benefit. (Doc. 15-34 at 67; doc. 15-15 at 123, 125). Instead, she reported that she received the widow's benefit. (Doc. 15-34 at 67). Accordingly, Hartford sent follow-up letters to Ms. Harling again requesting her notice of award for the disabled widow's benefit. (Doc. 15-15 at 123, 125).

In November 2023, an internal review discovered that the amount reported by Hartford's vendor for Ms. Harling's Social Security benefits did not account for both of her awards. (Doc. 15-3 at 14). Shortly after, Ms. Harling provided to Hartford an award letter specific to the disabled widow's benefit. (Doc. 15-33 at 57–58). Hartford then concluded that the amount it had offset for the previous four years did not include the disabled widow's benefit. (Doc. 15-15 at 111–13; doc. 15-2 at 15). It informed Ms. Harling that it had overpaid her each month and requested that she pay back $16,665.10. (Doc. 15-15 at 111–13, 115–19). Ms. Harling appealed (doc. 15-32 at 110–20; doc. 15-15 at 109), but Hartford affirmed its decision (doc. 15-15 at 103–08).

## II.   DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Ms. Harling asserts a claim against Hartford to secure withheld disability benefits. (Doc. 1 ¶¶ 1–3). ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010). Depending on the plan, one of three standards govern: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Id.* (footnote omitted).

The Eleventh Circuit has adopted a six-step framework to review ERISA policy administrators' decisions. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354–55 (11th Cir. 2011). To apply the framework, the court should:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

7

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355. Ms. Harling bears the burden of proving she is entitled to the benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008).

Ms. Harling argues that Hartford mistakenly concluded that it overpaid her because the disabled widow's benefit is not an offset under the policy's term.[1] (Doc. 23-1 at 8–15; doc. 26-2 at 18–26). And even if it is, Ms. Harling contends that ERISA regulations prevent Hartford from "reconsidering" any decision several years after her approval. (Doc. 23-1 at 15–20; doc. 26-2 at 26–27, 31–34). Moreover, Ms. Harling relies on several equitable principles to bar Hartford from recovering the money. (Doc. 23-1 at 21–26; doc. 26-2 at 27–31).

---

[1] The policy's terms are incorporated into the welfare benefit plan. (Doc. 15-1 at 36).

Hartford disagrees because it contends that the disabled widow's benefit serves as an offset. (Doc. 24-1 at 12–15). Even if this interpretation is incorrect, Hartford argues that it is entitled to deferential review and that its decision was reasonable. (*Id.*; doc. 25 at 12–17). Finally, Hartford notes that it never reconsidered any decision because it initially informed Ms. Harling that the disabled widow's benefit was an offset under the policy.[2] (Doc. 24-1 at 15–19; doc. 25 at 18–21).

The court addresses Hartford's motion first before turning to Ms. Harling's motion.

### 1. Hartford's motion

#### a. *The arbitrary and capricious standard of review governs.*

To begin, the parties dispute which standard of review governs Hartford's interpretation that the disabled widow's benefit is an offset. At step one of the Eleventh Circuit's framework, the court may assume that the administrator's decision was *de novo* wrong and resolve the case on the remaining steps. *Goldfarb v. Reliance Standard Life Ins. Co.*, 106 F.4th 1100, 1106 (11th Cir. 2024). Accordingly, the court assumes that Hartford's interpretation was *de novo* wrong and moves to step two.

---

[2] Ms. Harling objects to Hartford's motion because it does not specifically invoke Federal Rule of Civil Procedure 56 and because the court denied without prejudice her motion for discovery. (Doc. 26 at 1–2; *see also* doc. 21). Because the court resolves whether the disabled widow's benefit is an offset in Hartford's favor, the court **OVERRULES** Ms. Harling's objection.

At step two, Ms. Harling's policy granted Hartford full discretion. (Doc. 15-1 at 20 ("We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy."); *id.* at 36 (similar language)). Ms. Harling does not dispute the policy's language grants Hartford discretion to review claims and interpret the policy. (*See* doc. 26-2 at 14–17). She instead proffers three arguments for why *de novo* review should apply despite this clear grant.

First, Ms. Harling argues that the policy's language relies on statutory definitions, and the court must not defer to Hartford's statutory interpretation. (Doc. 23-1 at 8–9; doc. 26-2 at 14, 22). Ms. Harling maintains that the policy incorporates the definition of "disability benefits" from the Social Security Act. (Doc. 26-2 at 22–23). But she cites nothing in the policy's text to support this argument other than the words "disability benefits" themselves. (*See id.*; *see also* doc. 23-1 at 10). Nothing in the record or policy suggests that Hartford incorporated this statutory definition. (*See generally* doc. 15-1).

Next, Ms. Harling contends the court should review *de novo* Hartford's interpretation because Hartford offers "post hoc rationales" for its decision. (*See* doc. 26-2 at 14). Yet, no case that Ms. Harling relies on holds that a "post hoc rationale" changes the standard of review. *See, e.g.*, *Tippitt v. Reliance Standard Life Ins. Co.*, 276 F. App'x 912, 915 (11th Cir. 2008) (holding it was not error for a district court

to rely on "post hoc explanations" under the arbitrary and capricious standard of review); *Prolow v. Aetna Life Ins. Co.*, 584 F. Supp. 3d 1118, 1137 (S.D. Fla. 2022). In any event, Hartford told Ms. Harling that the disabled widow's benefit was a disability benefit that would offset her benefit award. (Doc. 15-15 at 22–25). It restated this reasoning in its final decision. (Doc. 15-15 at 103–08).

Lastly, Ms. Harling argues for *de novo* review because Hartford did not provide a full and fair review because it did not provide her the entire claim file. (Doc. 26-2 at 16). She relies on 29 C.F.R. § 2560.503–1(h)(2)(iii), but that regulation does not entitle her to the entire record—only the relevant portions. *Glazer*, 524 F.3d at 1245–46. She does not specify which documents Hartford did not supply or how not receiving those documents impacted her review. (*See* doc. 26-2 at 16–17).

Because the plan granted Hartford discretion, the arbitrary and capricious standard governs.

### b. *Hartford reasonably determined that the disabled widow's benefit qualified as an offset.*

At step three, because the arbitrary and capricious standard governs, the court will not disturb the determination if it was reasonable. *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989). Thus, Hartford's decision "must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Id.*

11

Ms. Harling first argues that the disabled widow's benefit is not a "disability benefit" under the policy's terms. (Doc. 26-2 at 18, 22–25). After defining "Other Income Benefits," the plan outlines specific examples of benefits that qualify as "Other Income Benefits," including "disability benefits under . . . the United States Social Security Act." (Doc. 15-1 at 22). The policy does not further define "disability benefits." (*See id.*).

It is undisputed that Ms. Harling would not be entitled to the disabled widow's benefit but-for her disability. *See* 42 U.S.C. § 402(e)(1); (doc. 24-1 at 12; doc. 26-2 at 25). The parties also agree that Social Security Act authorizes the disabled widow's benefit. *See* 42 U.S.C. § 402(e)(1); (doc. 24-1 at 13; doc. 23-1 at 14; doc. 26-2 at 24). The SSA notice of award characterizes the disabled widow's benefit as a "disability benefit." (Doc. 15-33 at 58). Other communications from the SSA to Ms. Harling connect her disability to her entitlement for the disabled widow's benefit. (*See, e.g.*, doc. 15-34 at 60, 134). Based on the SSA letters, the policy's language, and that Ms. Harling received the benefit early because she was disabled, it was reasonable for Hartford to determine that the disabled widow's benefit was a "disability benefit" under the Social Security Act.

Ms. Harling resists this conclusion. She argues that the policy does not explicitly mention the disabled widow's benefit as an example of an Other Income Benefit. (Doc. 26-2 at 19). But nothing in the policy's text indicates the examples

are intended to be exhaustive. (*See* doc. 15-1 at 22). Nor is Ms. Harling's reliance on

*Smith v. Board of Trustees of Teachers' & State Employees' Retirement System*, 471

S.E.2d 121 (N.C. App. 1996) persuasive. In that case, a North Carolina court held

that disabled widow's benefits did not qualify as "primary Social Security disability

benefits" under a state statute. *Id.* at 123. But *Smith* involved interpreting a state

statute, not a contractual provision. Moreover, this court must give deference to

Hartford's determination under ERISA, whereas the court in *Smith* was not bound

by deferential review. *See id.*

Ms. Harling also contends that the disabled widow's benefit does not fall

within the broad definition of "Other Income Benefit," so it cannot serve as an offset.

(Doc. 23-1 at 12–13; doc. 26-2 at 18–20). The plan defines "Other Income Benefits"

as "any benefit for loss of income . . . as a result of the period of Disability for which

You are claiming benefits under The Policy." (Doc. 15-1 at 22). She maintains that

it is not a benefit given for a "loss of income" because she receives the benefit as

spousal support because her ex-husband was the primary wage earner. (Doc. 26-2 at

20). However, "the plain and ordinary meaning of the policy terms" control. *See*

*Alexandra H. v. Oxford Health Ins. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th

Cir. 2016). And the policy's text does not limit the definition to a loss of the

policyholder's income. (*See* doc. 15-1 at 22). The disabled widow's benefit is

designed to replace the lost income both from the loss of primary wage earner and

13

Ms. Harling's inability to work because of her disability. *See* 42 U.S.C. § 402(e). Thus, it is for "loss of income."

The disabled widow's benefit meets the remaining requirements of the "Other Income Benefit" definition. It is undisputed that (1) Ms. Harling receives the disabled widow's benefit (Doc. 15-33 at 58; doc. 15-34 at 60, 134); (2) she would not have received the benefit early but-for her disability (doc. 24-1 at 12, 14; doc. 26-2 at 25; doc. 15-33 at 58); (3) the benefit replaces income, (doc. 26-2 at 20); *see* 42 U.S.C. § 402(e)(1). That means, Ms. Harling received the disabled widow's benefit "for loss of income" and "as a result of the period of Disability" that she claimed benefits from Hartford. (*See* doc. 15-1 at 22). Thus, Hartford's interpretation was reasonable.

The court's inquiry ends at step four because Hartford's interpretation was reasonable. In passing, Ms. Harling contends Hartford has a conflict of interest, (doc. 23-1 at 17; doc. 26-2 at 33, 35), but she makes no substantive argument, failing to cites any authority or portions of the record (*see* doc. 23-1 at 17; doc. 26-2 at 33, 35). Because a passing reference is not sufficient to raise the issue, the court does not consider it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

### c. *Hartford never reconsidered its determination.*

Even if Hartford's decision was reasonable, Ms. Harling argues that Hartford's correction of its overpayment constitutes a "reconsideration" of its initial decision, and it is improper for Hartford to make this "determination" outside the mandatory forty-five-day limit for claims decisions. (Doc. 26-2 at 26, 31–34). The court disagrees with both arguments.

In its initial determination letter to Ms. Harling, Hartford informed her that she was entitled to benefits, subject to an offset because of both Social Security benefits. (Doc. 15-15 at 24–25). The benefit calculation worksheet attached to the determination explicitly states, "Reductions for Other Income Benefits: Social Security Disability, Disabled Widow's Benefit." (*Id.* at 25). Although Ms. Harling disputes that this letter "state[s] a disabled widow's benefit was an offset," (doc. 26-2 at 5 ¶ 13), she does not dispute the contents of the letter as they appear in the record, nor does she point to anything in the record that establishes that she was told otherwise. To be sure, Hartford miscalculated Ms. Harling's offset, but it never determined that the disabled widow's benefit was not an offset, and Ms. Harling proffers no evidence that Hartford informed her that it was not an offset. The error provision allows Hartford "to recover . . . any amount that [it] determine[s] to be an overpayment." (Doc. 15-1 at 19). Consequently, Hartford's invocation of the error

15

provision to recover the offset payments was not a new determination—it was an enforcement of the original decision.

Ms. Harling argues that Hartford's invocation of the error provision was a redetermination of the original benefits decision and every benefit payment that Hartford distributed over four years. (Doc. 26-2 at 26–27, 31–34). And this "re-determination," she maintains, must comply with the claim determination timeline, which is forty-five days. (*Id.* at 33). Ms. Harling cites no authority to support her argument, nor does the policy's text compel that result. The claims procedure deadline is separate from the error provision. (*Compare* doc. 15-1 at 19, *with id.* at 39). There is no mention of a deadline for Hartford to demand repayment in the error provision section. (*Id.* at 19). Moreover, although Ms. Harling contends that she reported the two Social Security benefits to Hartford so it knew she was receiving the disabled widow's benefit, she did not report receiving the disabled widow's benefit in her questionnaires. (Doc. 15-38 at 47; doc. 15-34 at 67).

### d.  Ms. Harling's equitable arguments fail.

In response to Hartford's motion, Ms. Harling offers three equitable theories why Hartford should not be entitled to the funds. All theories rest on the same premise: because Hartford paid Ms. Harling the funds, it should not be allowed to reclaim the funds.

### i.    Voluntary Payment Doctrine

Ms. Harling first argues that the voluntary payment doctrine bars Hartford from offsetting the funds from future payments. (Doc. 26-2 at 27–29). But Ms. Harling points only to state law cases. *See Voyager Ins. Co. v. Whitson*, 867 So. 2d 1065, 1076 (Ala. 2003); *Emory Univ., Inc. v. Neurocare, Inc.*, 985 F.3d 1337, 1348–49 (11th Cir. 2021) (applying Georgia law). ERISA federal common law, not state law, governs this action. *See Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir. 1986). And Ms. Harling cites no—nor has the court found any—authority applying the voluntary payment doctrine under ERISA federal common law.

### ii.    Laches

Ms. Harling also argues the doctrine of laches bars Hartford from recovering the funds. (Doc. 26-2 at 30–31). But the doctrine of laches is an affirmative defense. *See* Fed. R. Civ. P. 8(c); *Herman v. S.C. Nat. Bank*, 140 F.3d 1413, 1427–28 (11th Cir. 1998). And Ms. Harling does not cite a case where the plaintiff relied on the doctrine to support her cause of action. (*See* doc. 23-1 at 24–25; doc. 26-2 at 30–31).

Several cases that Ms. Harling relies on do not even discuss the doctrine of laches. *See Phillips v. Mar. Ass'n-I.L.A. Loc. Pension Policy Plan*, 194 F. Supp. 2d 549 (E.D. Tex. 2001); *Dandurand v. Unum Life Ins. Co. of Am.*, 150 F. Supp. 2d 178 (D. Me. 2001). In the one case that relies on the doctrine, the plaintiff asserted the doctrine as a defense to a pension fund's counterclaim, and the court noted the

17

doctrine "arises when a defendant's position is so prejudiced by length of time and inexcusable delay." *See Kaliszewski v. Sheet Metal Workers' Nat. Pension*, No. 03-216E, 2005 WL 2297309, at *8 (W.D. Pa. July 19, 2005). Accordingly, the doctrine of laches does not apply.

### iii.    Misrepresentation

Ms. Harling also argues that Hartford violated the duty of loyalty by making a misrepresentation, so the insurer should not be entitled to the funds it paid. (Doc. 23-1 at 21–23; doc. 26-2 at 29–30). Ms. Harling also relies on *Jones v. American General Life & Accident Insurance Company*, 370 F.3d 1065 (11th Cir. 2004). *Jones*, however, is inapposite. The Eleventh Circuit addressed only the legal question of whether the plaintiffs could bring a cause of action based on the breach of a duty of loyalty in the ERISA context. *See id.* at 1071–74. In any event, the facts, too, are different. In *Jones*, the plaintiffs pleaded that the insurer told them they were entitled to benefits and sent letters representing the plaintiffs' insurance would continue. *Id.* at 1067, 1071–72. Here, Ms. Harling proffers no evidence that Hartford informed her that the disabled widow's benefit would not serve as an offset. The letters sent to Ms. Harling say the opposite. (*See, e.g.*, doc. 15-15 at 22–25).

18

2. Ms. Harling's motion

Most of Ms. Harling's motion repeats the same arguments made in opposition to Hartford's motion. (*Compare* doc. 23-1, *with* doc. 26-2). Accordingly, those arguments fail for the same reasons explained above. Ms. Harling's motion offers two distinct arguments. The court addresses each in turn.

First, to the extent that Ms. Harling argues the court should award relief because she has since turned sixty and the widow's benefit is not an offset, Ms. Harling was not sixty (and thus not entitled to the widow's benefit) when she appealed Hartford's decision and filed this action. (Doc. 23-1 at 26–27). And the challenged decision holds only that the disabled widow's benefit is an offset under the plan. (Doc. 15-15 at 103–08). Because Hartford has not yet determined that the widow's benefit serves as an offset, Ms. Harling's arguments are premature because she cannot challenge a decision that has not been made. *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008) ([P]laintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."); *see also Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1338 (11th Cir. 2019) ("[F]ederal courts will not give advisory opinions." (quotation marks omitted)).

Second, she argues that equitable estoppel "is available where the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that

constitute an informal interpretation of the ambiguity." *Jones*, 370 F.3d at 1069. In the ERISA context, equitable estoppel is "very narrow." *Id.*

Ms. Harling does not argue the policy's text is ambiguous nor does she establish any representations "that constitute an informal interpretation of the ambiguity." *Id.*; (*see* doc. 23-1 at 21–24; doc. 27 at 8–9). Although Ms. Harling argues that the payment amount qualifies as a representation, she points to no authority for her position. (*See* doc. 23-1 at 21). And Ms. Harling does not address the written representations that Hartford sent informing her that the disabled widow's benefit was an offset, its repeated request for information, and her failure to accurately reflect her benefits on multiple questionnaires. Accordingly, equitable estoppel does not apply. *See Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 936 (11th Cir. 2021) (applying equitable estoppel when the administrator made representations).

Because the court granted summary judgment in favor of the Hartford on Ms. Harling's sole claim and Ms. Harling's additional arguments fail, the court **WILL DENY** Ms. Harling's motion for summary judgment.

## III.   CONCLUSION

For the reasons above, the court **WILL GRANT** Hartford's motion and **ENTER SUMMARY JUDGMENT** in its favor. (Doc. 24). The court **WILL DENY** Ms. Harling's motion. (Doc. 23).

**DONE** and **ORDERED** this March 26, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE